IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **TONY EUGENE GRIMES,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | 00-C-0905-S |
| **BILLY MITCHEM, KENNETH JONES, WALTER** | ) | |
| **MYERS, RONALD CARTER, CHARLES WILLIS,** | ) | |
| **JAMES EARP, and SONDRA GOODSON (LPN),** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF OPINION ON MOTION FOR SUMMARY JUDGMENT**

This is a civil action brought pursuant to 28 U.S.C. § 1983 in which the plaintiff, Tony Eugene Grimes, a prisoner in custody of the Alabama Department of Corrections, alleges that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged while he was incarcerated at the Donaldson Correctional Facility in Bessemer, Alabama. The plaintiff names as defendants Billy Mitchem, Warden of the Donaldson facility; Kenneth Jones, former Deputy Warden at the Donaldson facility;[1] Sondra Goodson, former LPN at the Donaldson facility; Walter Myers and Captain Richard A. Carter;[2] Supervisors at the Donaldson facility; and James Earp, Officer at the Donaldson facility. The plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief.

The magistrate judge entered an Order for Special Report directing that copies of the complaint in this action be forwarded to defendants Mitchem, Jones, Myers, Carter, Willis, Earp and

---

[1] At the time of the defendants' Special Report, Kenneth Jones was employed as Correctional Warden, II at the Easterling Correctional Facility.

[2] This defendant is named as Ronald Carter in the complaint.

34

Goodson. The order requested that the defendants file a special report addressing the factual allegations of the plaintiff's complaint. The defendants were advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff was advised by that same order that he should file counter-affidavits if he wished to rebut the matters presented by the defendants in the special report. The plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendants' special reports.

The defendants filed special reports, accompanied by their affidavits and pertinent documents. The plaintiff submitted his affidavit in response to the correctional defendants' special report, but has not responded to the special report filed by the medical defendant, Nurse Sondra Goodson. On June 13, 2001, the court notified the parties that the special reports of the defendants would be construed collectively as a motion for summary judgment and the plaintiff was therein notified that he would have twenty (20) days to respond to the motion for summary judgment by filing affidavits or other materials if he so desired. The plaintiff was advised of the consequences of any failure to comply with Rule 56 of the Federal Rules of Civil Procedure. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). The plaintiff has not responded to the motion for summary judgment.

### A. SUMMARY JUDGMENT STANDARD

Because the special report of the defendants is being considered as a motion for summary judgment, the Court must determine whether the defendants, as moving parties, are entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In

making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d. 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex*, 477 U.S. 317; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the non-moving party, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex, 417 U.S. at 317*; *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial"... Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations omitted). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986).

### B. FACTUAL ALLEGATIONS

The plaintiff is an inmate at the William E. Donaldson Correctional Facility in Bessemer, Alabama. He filed this complaint on April 7, 2000, alleging that he was subjected to excessive

force by Officer Willis and that Officer Earp failed to intervene to prevent the assault. The plaintiff also contends that Officers Willis and Earp denied his request for medical assistance following the incident and that after he was taken to the infirmary by another officer he was denied adequate medical care by Nurse Goodson for injuries inflicted by Officer Willis. The plaintiff further contends that defendants Mitchem, Jones, Myers and Carter failed to protect him from Officer Willis after they had been warned of Willis' threats to abuse the plaintiff.

The incident which precipitated the complaint in this action occurred on the evening of March 13, 2000, as the plaintiff and other inmates were leaving the east dining hall of the Donaldson Correctional Facility. At that time, Officers Willis and Earp were stationed at the exit door in order to perform a search of the inmates as they left the hall: a process known as a "shake-down." (Document #1, p. 13). Officer Willis contends that as the plaintiff approached the exit door of the dining hall the plaintiff refused to be searched and "violently" pulled away, at which time Willis "used open hand control by holding [the plaintiff] by his left wrist [and] above his elbow and placing him ... on the wall to be searched."[3] (Exhibit 5 to Document #20). However, the plaintiff denies that he refused to be searched or that he voiced a protest or offered any resistance. (Document #21, p. 2). The plaintiff states that, as he stepped towards Officer Earp to be searched, Officer Willis "violently snatched and grabbed" the plaintiff and "slammed" him into the dining hall door. Willis had one of his hands around the back of the plaintiff's neck, and the other hand around the plaintiff's left elbow.[4] *Id.* The plaintiff states that while he was "pinned" to the dining hall door, Officer Earp "smiled at [the plaintiff's] discomfort" and Officer Willis told him that "that was a

---

[3] Officer Earp states: "[The plaintiff] would not turn around for Officer Willis to conduct a pat search of {the plaintiff}." (Exhibit 6 to Document #20).

[4] Officer Willis states: "At no time did I touch [the plaintiff] in his neck area." (Exhibit 5 to Document #20).

shake-down." (Document #1, p. 13). The plaintiff was then released by Officer Willis and told to proceed to the living quarters. *Id.*[5]

As a result of the confrontation with Willis, the plaintiff contends that he suffered wounds to his neck and his left elbow, causing him to bleed. The plaintiff claims he was threatened with being "pepper sprayed" when he complained of these injuries and requested medical care. (Document #21, pp. 2-3).[6] On his way back to the living quarters, the plaintiff met with Sgt. Thaddeus Smith,[7] who took the plaintiff to the infirmary where his wounds were treated by Nurse Sondra Goodson. *Id.* at 3.

The plaintiff's complaint against defendants Mitchem, Jones, Myers and Carter is that they failed to protect him after he sent a letter to them in February of 2000 complaining of abusive treatment from Officer Willis and Sgt. Eric Jones.[8] The plaintiff states that he met with Supervisor Myers on February 4, 2000, to discuss the contents of that letter and was left with the impression that Myers would counsel Willis and Jones regarding the plaintiff's concerns.

Finally, the plaintiff has asserted in his complaint that Nurse Sondra Goodson failed to treat him for the injuries he incurred in the March 13, 2000, incident. However, that assertion is contradicted by the plaintiff's later statement that he was taken to the infirmary by Sgt. Thaddeus Smith where his wounds "were cleaned of the blood and artificial skin or alternative skin was placed over the wounds as a covering." (Document #21, p. 3). The Court notes that the plaintiff has submitted no direct response to the special report of Nurse Goodson.

---

[5] Attached to the plaintiff's complaint are the affidavits of five fellow inmates who corroborate his version of the incident. (Document #1, pp. 8-12).

[6] Officer Earp contends that the plaintiff never requested medical attention from either himself or Willis. (Exhibit 6 to Document #20).

[7] Sgt. Smith is not a party to this action.

[8] Sgt. Jones is not a party to this action.

C. THE EXCESSIVE FORCE CLAIM

The defendants have asserted the defense of qualified immunity with respect to the claim of excessive force. However,

> [i]n this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*...There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation...The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment. If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002)(citing *Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002)); *see Whitley v. Albers*, 475 U.S. 312 (1986); *Hudson v. McMillian*, 503 U.S. 1 (1992). Accordingly, with respect to the excessive force claim, the defendants' request for qualified immunity is due to be denied. The remainder of this opinion on the issue of excessive force shall be devoted to whether the plaintiff has alleged sufficient facts to survive the defendants' motion for summary judgment.

The United States Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976), stated that the Eighth Amendment:

> 'embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency,'...against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society'...or which involve the 'unnecessary and wanton infliction of pain...'

*Estelle*, 429 U.S. at 102 (citations omitted). The Court's evaluation of an Eighth Amendment claim against prison officials involves both an objective component (was the deprivation sufficiently serious?) and a subjective component (did the officials act with a sufficiently culpable state of mind?). *See Wilson v. Seiter*, 501 U.S. 294 (1991).

The Supreme Court in *Hudson* provided specific direction regarding the objective component:

> The objective component of an Eighth Amendment claim is ... contextual and responsive to 'contemporary standards of decency.' ... In the excessive force context...[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such result would have been as unacceptable to the drafters of the Eighth Amendment as it is today... That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'

*Hudson*, 503 U.S. at 8-10 (citations omitted). In this case, the plaintiff has shown that his purported deprivation was sufficiently serious. The facts, construed in a light most favorable to the plaintiff, indicate that the plaintiff's head and chest were pushed violently against the dining hall door and that he sustained injuries to his neck and elbow sufficient to draw blood. The defendants' medical records do not dispute the plaintiff's allegations with respect to the injuries described in the complaint. These injuries are not *de minimis* and are sufficiently serious to meet the objective component of the Eighth Amendment analysis.

The subjective component of the Eighth Amendment claim is met if the force was applied "maliciously and sadistically for the purpose of causing harm" resulting in an "unnecessary and wanton infliction of pain." *Hudson*, 503 U.S. at 6-7. The factors to be examined in determining whether the use of force was unnecessary and wanton include an evaluation of: 1) the need for the application of the force, 2) the relationship between that need and the amount of force used, 3) the threat reasonably perceived by the responsible officials, and 4) any efforts made to temper the severity of the response. *Hudson*, 503 U.S. at 7.

There are genuine disputes of material fact concerning whether the plaintiff's allegations

satisfy the subjective component of the analysis with respect to defendants Charles Willis and James Earp.[9] The plaintiff's affidavit and the affidavits of his fellow inmates show that the plaintiff had not offered any resistance and was not engaging in conduct which would warrant the action taken by Officer Willis. Therefore, the motion for summary judgment filed on behalf of Charles Willis and James Earp is due to be denied with respect to the excessive force issue.

### D. THE DENIAL OF MEDICAL ATTENTION CLAIM

The plaintiff charges defendants Willis, Earp and Goodson with a failure to provide adequate medical treatment for the injuries about which the plaintiff complains in this action. The plaintiff states that, after he was informed by other inmates that he was bleeding from his neck and elbow, he requested medical attention from Officers Willis and Earp, who denied his request. (Document #1, pp. 5-6; Document #21, pp. 2-3). The plaintiff was later taken to the prison infirmary by Sgt. Thaddeus Smith where it is undisputed that Nurse Sondra Goodson treated him for scratches to his neck and elbow. (Document #21, p. 3).

"Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment prohibition of cruel and unusual punishment...[and ]...[i]f prison guards delay or deny access to medical care or intentionally interfere with treatment once prescribed, the Eighth Amendment is violated." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1998) (citing *Estelle,* 429 U.S. at 104-05). However, because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only when those needs are "serious." *Hill v. Dekalb Regional Youth*

---

[9] Although it is clear that defendant Earp did not participate directly in the application of force, the plaintiff presents enough evidence to create a genuine issue of fact as to whether or not Earp was in a position to prevent the use of force and failed to do so. A guard who is present when other guards use excessive force upon an inmate, but fails to take reasonable steps to intervene, may be liable for nonfeasance under section 1983. *See Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998).

*Detention Center*, 40 F. 3d 1176 (11th Cir. 1994). A "serious" medical need has been defined as "one that has either been diagnosed by a physician as mandating medical treatment or one that is so obvious that even a lay person would recognize the need for a doctor's attention." *Hill*, 40 F. 3d at 1187 (quoting *Laaman v. Helgemoe*, 437 F.Supp. 269, 311 (D.N.H. 1977)). Additionally, the "seriousness" of an inmates medical needs may also be gauged by examining the effect of delay in treatment. *Id.* at 1188. Thus, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.*

The plaintiff has pointed to nothing in the record to establish that the injuries he suffered in this matter are sufficiently serious to warrant a finding that defendants Willis and Earp committed an Eighth Amendment violation by their alleged refusal to allow the plaintiff access to the prison infirmary. Scratches to the neck and elbow are not the kind of injuries that a lay person would recognize as requiring the need for a doctor's attention. *See Gaudreault v. Municipality of Salem, Mass*, 923 F.2d 203, 208 (1st Cir. 1990). More importantly, the plaintiff has not alleged, nor has he provided verifying medical evidence to show that, the delay caused by the officers' inaction had a detrimental effect on the plaintiff's injuries. Although it is not clear how much of a delay was caused by the officers' refusal to assist, it is apparent that the delay was minimal. The plaintiff states that as he proceeded up the hall towards the living quarters he was met by Sgt. Smith who took him to the infirmary. (Document #21, p. 3). There is nothing before the Court to indicate that the delay resulted in any additional detriment to the plaintiff. Consequently, the Court finds that there is no genuine issue of material fact with respect to the plaintiff's claims against Willis and Earp. Said defendants are entitled to judgment as a matter of law.

Plaintiff's claims against Nurse Sondra Goodson are also due to be dismissed. In his

complaint, the plaintiff alleges that he was brought before Nurse Goodson who "failed to treat [his] wounds after observing them." (Document #1, p. 6). However, the plaintiff contradicts his own allegation in later pleadings.[10] In his "Declaration in Opposition to Defendants' Motion for Summary Judgment," the Plaintiff states that Sgt. Smith took him to the infirmary where his wounds were "cleaned" and "artificial skin" was placed over them. (Document #21, p. 3)  More importantly, the plaintiff has presented nothing in rebuttal to Nurse Goodson's affidavit which states in pertinent part:

> He presented to the Infirmary with scratches to the left elbow, right lateral neck area. There were superficial abrasions noted at both areas with a minimal amount of dried blood on the right neck area and left elbow. The areas were cleaned with hydrogen peroxide, treated with triple antibiotic ointment. He refused any application of band-aids. He was advised to sign up for sick call as needed.

(Exhibit A to Document #30).

Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under Section 1983. *Estelle*, 429 U.S. 97. Therefore, negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Id.* at 106; *McElligot v. Foley*, 182 F.3d 1248 (11th Cir. 1999). A mere difference of opinion between an inmate and the prison medical staff as to treatment or diagnosis will not, alone, give rise to a cause of action under the Eighth Amendment. *Harris*, 941 F. 2d at 1505.

The undisputed fact is that the plaintiff's injuries were treated by Nurse Goodson in a timely and adequate manner. There is no evidence of conduct on the part of Nurse Goodson which would

---

[10] Allegations that are contradicted by other allegations in the complaint may constitute additional grounds for dismissal. *See Battle v. Central State Hospital*, 898 F.2d 126 (11th Cir. 1990).

constitute the "deliberate indifference" required by *Estelle* to state a constitutional claim. Likewise, the fact that the plaintiff may have desired a different mode of treatment also fails to establish the requisite deliberate indifference on the part of this defendant. *Id.* at 1507. It is clear that medical services provided to a prisoner need not be perfect. Where a prisoner has, in fact, been provided medical care for an injury or condition, the court will be hesitant to find an Eighth Amendment violation. *Waldrop v. Evans*, 871 F.2d 1030 (11th Cir. 1989).

> Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Harris*, 941 F. 2d at 1507 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

Accordingly, the Court finds that there is no genuine issue of material fact with respect to the medical treatment provided by Nurse Sondra Goodson and she is therefore entitled to judgment as a matter of law.

### E. THE FAILURE TO PROTECT CLAIM

The plaintiff claims that, in February of 2000, he wrote a letter to defendants Mitchem, Jones, Myers and Carter informing them of the "threats, provocation, promises of abuse, and/or physical violence to [his] person by ... Officer Charles Willis." (Document #1, pp. 5, 14). The plaintiff further alleges that he met with defendant Myers on February 4, 2000 to "discuss the contents of that formal letter" and that Myers gave the plaintiff the "impression that he would counsel [Officer Willis]." (Document #1, p. 14). The plaintiff now contends that his Eighth and Fourteenth Amendment rights were violated by these defendants' failure to intervene in order to prevent the excessive force used by Willis.

When prison officials become aware of a threat to an inmate's health and safety, the Eighth

Amendment's prohibition against cruel and unusual punishment imposes a duty on those officials to provide reasonable protection. *Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990). However, prison officials are not the insurers of the safety of inmates. *Jones v. United States*, 534 F.2d 53 (5th Cir.), *cert. denied*, 429 U.S. 978 (1976). To establish a deprivation of Eighth Amendment rights, a prisoner must show deliberate indifference on the part of the prison officials to the prisoner's need for reasonable protection from violence. *Farmer v. Brennan,* 511 U.S. 825, 835 (1994). "Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citing *Estelle*, 429 U.S. at 105-06). "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a [defendant's] failure to act can constitute deliberate indifference." *Brown*, 894 F.2d at 1537 (citing *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)). The *Farmer* court defined "deliberate indifference" as requiring more than mere negligence, but less than conduct undertaken to cause harm. *Id.* at 1978. As the court explained:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 1979.

The undisputed facts before the Court do not support a finding that said defendants were deliberately indifferent to the plaintiff's need for reasonable protection from violence. Even when viewing the facts in a light most favorable to the plaintiff, it cannot be said that the defendants possessed the knowledge necessary to conclude that the danger faced by the plaintiff was <u>substantial</u> or <u>excessive</u>, or that there was a <u>strong likelihood</u> that the plaintiff would be injured by Officer

Willis. Included in the record is a copy of the letter the plaintiff purportedly wrote to the defendants regarding the threats by Officer Willis. In that letter, the Plaintiff cites no specific incident involving Officer Willis, and fails to set forth any specific threats made by Willis. The only specific incident mentioned in the letter involved Sgt Eric Jones, who is not a party to this action and is not alleged to have participated in the March 13, 2000, incident. There is nothing that would have put these defendants on notice that Officer Willis posed a "substantial risk" to the plaintiff. Accordingly, the plaintiff's claims against defendants Mitchem, Jones, Myers and Carter are due to be dismissed.

An appropriate Order embodying these conclusions shall be entered.

Done this ___31st___ day of March, 2002.

_____
Chief United States District Judge
U.W. Clemon